**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Tara S. Hopper, on behalf of herself**<br>**and all others similarly situated,**<br>314 Station Street East<br>Ashville, Ohio 43130 | **Case No.: 2:20-cv-522** |
| | **Judge Sargus** |
| **Plaintiff,** | |
| | **Magistrate Judge Vascura** |
| **vs.** | |
| **Credit Associates, LLC,**<br>c/o Statutory Agent, CT Corporation System<br>1999 Bryan Street, Suite 900<br>Dallas, Texas 75201 | **FIRST AMENDED**<br>**CLASS ACTION COMPLAINT**<br>**AND REQUEST FOR DECLARATORY**<br>**RELIEF** |
| **and** | |
| **TransUnion**<br>555 West Adams Street<br>Chicago, Illinois 60661 | **JURY DEMAND ENDORSED HEREIN** |
| **Defendants.** | |

## INTRODUCTION AND NATURE OF ACTION

1. Among other amended allegations herein, Plaintiff hereby amends this Complaint under Civ. R. 15(a)(1)(B) as a matter of course to include allegations from newly discovered evidence that Defendant Credit Associates, LLC ("Credit Associates") not only fails to make a firm offer of credit, but also that its purported offer is a sham. Credit Associates purports in its solicitation letter to offer fee deferrals to Plaintiff and the Class when, in fact, no such deferrals are offered in the scripted sales pitch or form contract to consumers. The sham offer thus provides additional grounds for Plaintiff's claim that Credit Associates fails to make a firm offer

of credit as required by the FCRA. The sham offer likewise bolsters Plaintiff's claim that Defendant TransUnion failed its due diligence under the FCRA, as alleged further herein.

2.      Since at least 2017, Credit Associates has unlawfully obtained and misused the private financial data of thousands of financially distressed Ohioans. In particular, Credit Associates has violated, and continues to violate, the Fair Credit Reporting Act ("FCRA") by obtaining Ohioans' private credit data without a statutorily permitted purpose. Credit Associates has misused the illegally obtained data to solicit debt relief business from Plaintiff Tara Hopper and thousands of similarly situated Ohioans.

3.      Defendant TransUnion ("TransUnion") has likewise violated the FCRA by improperly providing the private financial data to Credit Associates for impermissible direct-mail marketing purposes.  On behalf of herself and all others similarly situated, Plaintiff Tara Hopper ("Hopper") seeks damages for the harm caused by Defendants' unlawful acts and a declaration that Defendants have acted unlawfully.

## JURISDICTION, VENUE, AND PARTIES

4.      This is a class action brought under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), as well as Southern District of Ohio Local Rule 23.1–3, seeking monetary and declaratory relief, both individually for Plaintiff and for the putative Class.

5.      This Court maintains subject matter jurisdiction pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as further alleged herein.

6.      Plaintiff Tara Hopper is a domiciliary of Ashville, Pickaway County, Ohio.

7.      Upon information and belief, over two-thirds of the putative Class Members are domiciled in Ohio.

2

8.     Credit Associates is a Texas limited liability company that transacts substantial and ongoing business in the State of Ohio with Ohio citizens.  Credit Associates' principal place of business is 5050 Quorum Drive, Suite 700, Dallas, Texas, 75254.  The company holds itself out as a consumer debt relief, settlement, and negotiation business that will "drastically reduce your total debt.   You are guaranteed to save money thanks to our industry-leading negotiating software and team." www.creditassociates.com/how-it-works/.

9.     TransUnion is an Illinois corporation that transacts substantial and ongoing credit reporting business in the State of Ohio with Ohio citizens and businesses.   Defendant TransUnion's principal places of business is 555 West Adams Street, Chicago, Illinois, 60661. TransUnion publicly states its "mission is to help people around the world access the opportunities that lead to a higher quality of life, by helping organizations optimize their risk-based decisions and enabling consumers to understand and manage their personal information." www.transunion.com/about-us/about-information.   As detailed further in this Complaint, TransUnion provided the credit and financial information of Ohioans to Credit Associates for the purpose of marketing to Ohio citizens.

10.     Unless otherwise stated, "Defendant" or "Defendants" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named in this Complaint.

11.     Credit Associates transacts business in the State of Ohio by, among other ongoing, substantial, direct and intentional acts, direct-marketing its debt settlement and relief services to Ohio consumers.  Credit Associates likewise solicits Ohioans, including those in the putative Class, concerning debt relief, negotiation and settlement services, and then pitches a debt

3

settlement program on behalf of at least one Ohio law firm and debt settlement company, among other ongoing, substantial, direct and intentional acts with Ohio.

12.     TransUnion transacts business in the State of Ohio by, among other ongoing, substantial, direct and intentional acts, (a) marketing and providing its credit reporting and other services to Ohio consumers, (b) maintaining and operating businesses from one or more of its offices in Ohio, including the facility at 6200 Oak Tree Blvd., Independence, Ohio 44131, (c) entering into ongoing relationships, contracts and business services with Ohioans and Ohio businesses related to credit reporting, risk-based consulting, and others services; and (d) providing credit and financial information of the Ohioans in the putative class to Defendant Credit Associates for the purpose of direct-mail marketing.

13.     Based on the foregoing and further allegations in this Complaint, all Defendants have availed themselves of, and secured the benefits of, the Ohio marketplace by, among other things, (a) buying and selling the consumer and/or credit reports of Ohioans knowing the breach of privacy and related injuries will occur in the State of Ohio to an Ohio consumer, (b) directing business and marketing solicitations to Ohioans, (c) seeking participation of Ohioans in debt settlement and relief programs, and (d) contracting with Ohioans for various financial, credit reporting and/or debt services.  Defendants, therefore, are subject to this Court's personal jurisdiction.

14.     Venue is appropriate under 28 U.S.C. § 1391 and Southern District of Ohio Local Rule 82.1 because a substantial portion of events giving rise to this action occurred in this District, among other reasons.

## BACKGROUND AND FACTUAL ALLEGATIONS

15.     This is a class action based upon an ongoing scheme and common course of conduct perpetrated by Credit Associates and TransUnion to illegally provide, obtain and/or misuse consumer reports to market debt settlement services through direct-mail solicitations aimed at Ohio citizens.

16.     TransUnion is a "consumer reporting agency" regulated by the FCRA 15 U.S.C. § 1681 *et seq.*, and specifically 15 U.S.C. §§ 1681e(a)–1681g.  A "consumer reporting agency" is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

17.     Credit Associates holds itself out as a business that provides debt settlement and relief services.  See, for example, the company website at www.creditassociates.com, where the company claims to "help debt-burdened clients get debt relief every day with fast and cost-effective solutions."  https://www.creditassociates.com/how-it-works/.

18.     In furtherance of its business, Defendant Credit Associates generates marketing leads for other debt relief businesses and law firms, including at least one such firm which claims it is licensed to represent Ohio consumers in the practice of law.

19.     TransUnion is likewise a "consumer reporting agency" in the business of supplying consumer reports, which are also sometimes called "pre-screened lists" in the debt relief industry.  A pre-screened list contains the identities of individuals with certain factors bearing on

creditworthiness, often including (a) debt balances, (b) information about creditors and debt (also known as "credit tradeline"), (c) high interest rate debt, and (d) and/or unsecured debt, among other factors.

20.     Such pre-screened lists constitute "consumer reports" because they are "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ." 15 U.S.C. § 1681a(d)(1).

21.     Under the FCRA, such consumer reports can only be obtained, provided and/or used for a permissible purpose, such as making a "firm offer of credit or insurance." 15 U.S.C. § 1681b(f).  *See also Trans Union v. FTC,* 245 F.3d 809 (D.C. 2001).

22.     A "firm offer of credit" is one that will be honored, subject to certain exceptions, if the consumer continues to meet the criteria that was used to select the consumer for the offer. 15 U.S.C. § 1681a(l).

23.     In this case, TransUnion compiles and provides pre-screened lists of Ohio citizens to Credit Associates for its use in direct-mail marketing campaigns targeted at those same Ohioans.

24.     Credit Associates seeks the pre-screened lists by identifying potential Ohioans based on certain factors bearing on creditworthiness, including (a) debt balances, (b) information about creditors and debt (also known as "credit tradeline"), (c) high interest rate debt, and/or (d) unsecured debt, among other factors.

25.     Credit Associates then requests the lists of Ohioans who fit the designated factors, and thereafter TransUnion supplies such pre-screened lists.

26.     Credit Associates requests and obtains the pre-screened lists for the improper purpose of direct-mail marketing its debt relief services to Ohioans.

27.     Credit Associates and TransUnion both know that the pre-screened lists contain FRCA-protected financial and credit data of Ohioans.

28.     Using, obtaining or furnishing pre-screened lists to send solicitations to marketing debt relief services is not a permissible purpose under the FCRA.

29.     Defendants, acting in concert, in an agency relationship, and/or individually, mailed and/or delivered thousands of direct mail solicitations to Ohio citizens, including Plaintiff Hopper and the putative Class Members.

30.     In late 2018, Plaintiff Hopper received a form direct-mail solicitation for debt relief services from Defendant Credit Associates. The letter requests a response deadline of October 29, 2018. *See*, Hopper's form direct mail solicitation attached hereto as Exhibit A.

31.     Hopper received a second letter dated January 25, 2019, which was almost identical to the first letter.

32.     The direct mail solicitation letters received by Hopper are identical in all material respects to the direct-mail solicitations received by the putative Class Members.

33.     Credit Associates acknowledges in the form direct-mail solicitation that it is "not a lender, creditor or debt collector." *See* Exhibit A.

34.     The form direct-mail solicitation indicates, "…you are pre-approved for a debt relief program that can save you thousands of dollars with no up-front cost to you." *See*, Exhibit A.

35.     The form direct-mail solicitation further acknowledges that it was obtained from the consumer's credit report, stating in relevant part:

> PRESCREEN & OPT OUT NOTICE: This "pre-screened" offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria. If you do not want to receive pre-screened offers of credit from this and other companies, call the consumer reporting agencies toll-free at 1-888-5-OPT-OUT (1-888-567-8688) or visit the website at www.optoutprescreen.com; or write TransUnion Opt Out Request P.O. Box 505, Woodlyn, PA 19094-0505.

36.     The form letter contradicts itself by also indicating that the information was obtained from public records, thus creating likely confusion or misleading information for the recipient. *See* Exhibit A.

37.     The form letter indicates, "Not available in all states". *See*, Exhibit A.

38.     Credit Associates' website states, on its home page, "Services not available in all states, including New Jersey. Where applicable, Credit Associates will refer you to an accredited service provider who can provide debt relief services you need." An identical statement representing Credit Associates does provide services in all states is disclosed at the bottom of a paid advertisement landing page should one perform a google search using the key terms "Credit Associates", and is the very first listing in the google search. *See, e.g.,* https://www.creditassociates.org/?gclid=EAIaIQobChMIotCc6d7H6QIVFIrICh1NGAvMEAAYASA AEgIzHPD_BwE.

39.     Credit Associates' form solicitation letter does not make a "firm offer of credit" as required by 15 U.S.C. § 1681b(f).

40. The form solicitation letter betrays the "non-firm," contingent and uncertain nature of the solicitation by stating that, "Your preapproval guarantees the extra deferral of fees that would have otherwise been due after each amount is successfully resolved." *See* Exhibit A.

41. Although the mailer indicates Hopper's "preapproval guarantees the extra deferral of fees that would have otherwise been due after each amount is successfully resolved", no such offer was made to Hopper when she responded to the solicitation.

42. Furthermore, a direct-mail solicitation only qualifies as a firm offer of credit by committing to the credit *before* extending the offer, and the consumer continues to meet the specific criteria used to select the consumer for the offer.

43. A firm offer of credit may be further conditioned on the consumer possessing additional characteristics that were not used to select the consumer for the offer. Those additional characteristics, however, must be established *before* the offer is extended.

44. Moreover, credit reporting agencies must keep record of the characteristics used to select the consumer to receive the firm offer and all other pre-established eligibility requirements for at least three years from the date of the firm offer.

45. Credit Associates and TransUnion did not, prior to the direct-mail solicitations, commit to make a firm offer of credit if Plaintiff Hopper and the putative Class Members continued to meet specific criteria used to select them for the prescreened lists.

46. Similarly, Credit Associates and TransUnion did not establish additional characteristics that would allow Plaintiff Hopper or the putative Class Members to be eligible for a firm offer of credit.

47.     Credit Associates and TransUnion did not, and do not, keep records of the characteristics used to select consumers such as Plaintiff Hopper and the putative Class Members.

48.     Furthermore, TransUnion did not review, certify, or approve the form direct-mail solicitation sent by Credit Associates, even though TransUnion knew the solicitations would be used for an impermissible and illegal marketing purpose in violation of the FCRA.

49.     In the alternative, TransUnion reviewed, certified or approved the form direct-mail solicitation sent by Credit Associates when it knew or should have known it would be used for an impermissible and illegal purpose in direct violation of the FCRA.

50.     Plaintiff Hopper and the putative Class Members did not authorize Defendants to request, provide and/or use their consumer reports, including personal identifying information such as names, addresses, and last four digits of social security numbers, as well as private financial information such as credit scores, credit utilization rate, credit standing, and amount of debt.

51.     Plaintiff Hopper and the putative Class Members did not receive this direct mail solicitation in response to an application for credit, service, insurance, or employment from Defendants.

52.     Credit Associates' offer to defer extra fees when Plaintiff contracts with an Ohio debt relief entity is, in fact, a false or sham offer.  In actual practice, Credit Associates does not defer extra fees for Ohio consumers, nor does it offer such in its sales pitch.  Credit Associates is using the impermissibly obtained data to market for a third party which contracts with Ohio

10

consumers and whose fees are payable in full when earned pursuant to the contract. As such, the purported "offer" in the solicitation letter is not firm, genuine or accurate.

53.     TransUnion either knew of the sham offer or did not make a reasonable effort to learn of its existence as required by FCRA due diligence. In particular, among other alleged failures, TransUnion failed to exercise due diligence to identify and/or verify the end user who does not honor any purported "offer" to defer extra fees.

54.     Through minimal and reasonable effort, TransUnion would have learned Credit Associates may not be the end user of the data. The home page of Credit Associates' website as well as a paid landing page at the top of a google search indicates Credit Associates' services are not available in all states, and it would refer clients to "an accredited service provider who can provide debt relief services you need."

55.     In addition, as discussed above, the form solicitation letter indicates, "Not available in all states." Through minimal and reasonable effort, TransUnion could have reviewed the mailer and then determined whether the mailer was distributed in states where Credit Associates' services aren't available. If it was, TransUnion would know Credit Associates was not the end user of the data.

56.     Like all other allegations herein, the specific allegations concerning the sham nature of the purported fee deferral apply to the Class as defined and alleged below.

## CLASS ALLEGATIONS

57.     Plaintiff Hopper brings this action individually and on behalf of all those similarly situated as members of the following class:

**Ohio citizens on the prescreened lists Defendants obtained, used and/or provided from January 1, 2017 to the present for marketing debt relief services.**

58.    Plaintiff is a member of this putative Class.  Specifically excluded from this Class are the following: (1) Defendants Credit Associates and TransUnion, any entity in which either Defendant has a controlling interest, and the officers, directors, employees, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity; and (2) any judge or judicial officer with responsibility over the management or resolution of this litigation and members of any such individual's immediate family.

59.    The action is properly brought and maintainable under Fed. R. Civ. P. 23 for the following reasons:

    a.  The anticipated and projected size of the Class is so numerous that joinder of all members is impracticable.  Upon information and belief, Defendant Credit Associates has engaged, and continues to engage, in large scale direct-mail solicitation direct toward thousands of Ohioans, as indicated in part by the attached Exhibit A form solicitation letter.  Accordingly, the projected size of the class likely equals thousands of Ohioans.

    b.  There are common questions of law and fact that predominate over any questions solely affecting individual Class Members.  Among such common questions of law and fact are the following:

        i.  Does the Defendants' systematic and uniform method of obtaining, providing and/or using the consumer reports for direct-mail marketing debt relief services violate the FCRA?

        ii.  Does the uniform language on the form solicitation letter constitute a firm offer of credit under the FCRA?

        iii.  Does the Defendants' systematic, uniform practice of making a false or sham offer to defer extra fees also fail to satisfy the FCRA's firm offer of credit requirement?

        iv.  What measure of FCRA statutory damages will compensate the Class for the identical and uniform harm suffered.

12

c. Plaintiff's claims are typical of the claims of other Class Members because they are identical to the claims of the putative Class Members. In particular, the legal theory, any applicable defenses, and the claimed relief are all identical with respect to the Class under the FCRA.

d. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interest antagonistic to those of other Class Members, and Plaintiff has retained attorneys experienced as counsel in class actions, consumer protection, and complex litigation. More specifically, among other reasons, counsel have successfully prosecuted similar FCRA litigation in this jurisdiction. The firms representing Plaintiff and the putative Class have more than 75 years of combined experience handling consumer and complex civil litigation, including previous successful FCRA class action litigation in this District.

60. In addition, this class action is superior to the other available methods for the fair

and efficient adjudication of this controversy for at least the following reasons:

a. Given the size of individual Class Members' claims—between $100 and $1,000 in statutory damages under the FCRA—and the expense of litigation, few if any Class Members could afford to, or would, seek legal redress individually for the wrongs Defendants have committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions. As of the date of filing this complaint, Plaintiff is aware of no individual actions pending in the State of Ohio.

b. When the liability of Defendants has been adjudicated, claims of all Class Members can be administered efficiently and/or determined by the Court. Indeed, as noted above, Plaintiff's counsel has successfully settled a similar FCRA class action without administration or efficiency problems. Likewise, the Defendants' business records contain the names and addresses of the putative Class Members.

c. The class action will promote an orderly and expeditious administration and adjudication of the class action. Economies of time, effort, and resources will be fostered, and uniformity of decisions will be ensured.

d. Without a class action, the Class Members will continue to suffer damages and Defendants' unlawful conduct will be unaccounted for while they continue to reap and retain the substantial benefits of their wrongful actions.

61.     No difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action.  Rather, those harmed by Defendants can be readily identified and their claims efficiently administered through Defendants' business records—the pre-screened lists at issue in this action.

62.     Prosecuting separate actions by or against individual members of the class would create risk of (A) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and/or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

63.     Notice can be provided to members of the Class by regular U.S. Mail because Defendants should maintain a database with prescreened lists of all Class Members.

64.     The maintenance of any sub-classes may be appropriate under Fed. R. Civ. P. 23(c)(4).

## COUNT ONE – CREDIT ASSOCIATES LLC
### (VIOLATION OF THE FAIR CREDIT REPORTING ACT,
### OBTAINING CONSUMER INFORMATION UNDER FALSE PRETENSES, 15 U.S.C. § 1681q)

65.     Plaintiff repeats, re-alleges, and incorporates by reference, as though set forth herein, the prior paragraphs of this Amended Complaint.

66.     Credit Associates pulled Plaintiff and the Proposed Class Members' consumer reports under false pretenses.

67.     Credit Associates violated the FCRA by knowingly and willfully procuring information on Plaintiff under false pretenses, 15 U.S.C. § 1681q.

14

68.     Credit Associates acted knowingly and willfully.   Credit Associates′ conduct is reflected by:

(a)     The FCRA was enacted in 1970; Credit Associates has had over 40 years to become compliant;

(b)     Credit Associates violated a clear statutory mandate set forth in 15 U.S.C. § 1681q;

(c)     Credit Associates knew it was not, and had no intention of making a firm offer of credit. Similarly, Credit Associates knew any third party to which it referred a lead from a consumer in Ohio, and generated by the mailing campaign at issue in this complaint, had no intention of making a firm offer of credit.

(d)     Credit Associates represented in its solicitation it would provide for the "extra deferral of fees that would have otherwise been due after each account is successfully resolved" knowing that:

   a.   this "extra deferral of fees" is not a firm offer of credit, and/or

   b.   neither Credit Associates nor the third parties to which it refers Ohio consumers would actually contract for this "extra deferral of fee".

Credit Associates only inserted this language in its solicitation to illegally procure valuable consumer marketing data to which it would otherwise not be able to access.

(e)     Credit Associates systematically procured consumer information without permissible purposes despite myriad statutory text and guidance.

(f)     By adopting such a policy, Credit Associates voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

69.     Plaintiff is entitled to Statutory damages of not less than $100 and not more than

15

$1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff is also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff is further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT TWO-CREDIT ASSOCIATES LLC
## (VIOLATION OF THE FAIR CREDIT REPORTING ACT, WILLFUL NONCOMPLIANCE, 15 U.S.C. § 1681n)

70.     Plaintiff repeats, re-alleges, and incorporates by reference all the foregoing paragraphs.

71.     Plaintiff and each Class Member is a "consumer" as defined by FCRA, 15 U.S.C. § 1681a(c).

72.     Credit Associates either directly, or through their agents, obtained, provided and/or used information on Plaintiff's and Class Members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and/or mode of living from a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

73.     The private information at issue constitutes a "consumer report" as defined by the FCRA, 15 U.S.C. § 1681a(d).

74.     Among other wrongful acts asserted herein, Credit Associates willfully obtained and/or misused Plaintiff's and the Class Members' consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681n. More specifically, Credit Associates willfully obtained, misused and/or provided the consumer reports under the false guise and/or

16

pretext of a permissible FCRA purpose only to utilize the information for improper direct-mail marketing. Such conduct violates the FCRA.

75. As a direct and proximate result of Credit Associates' misconduct, Plaintiff and the Class have suffered actual harm in the State of Ohio that entitles them to statutory FCRA damages, among other relief.

## COUNT THREE – CREDIT ASSOCIATES LLC
### (VIOLATION OF THE FAIR CREDIT REPORTING ACT, NEGLIGENT NONCOMPLIANCE, 15 U.S.C. § 1681o)

76. Plaintiff repeats, re-alleges, and incorporates by reference all the foregoing paragraphs.

77. Credit Associates negligently obtained and misused Plaintiff's and the Class Members' consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

78. As a direct and proximate result of Credit Associates' misconduct, Plaintiff and the Class have suffered actual harm in the State of Ohio that entitles them to statutory FCRA damages, among other relief.

## COUNT FOUR – TRANSUNION
### (VIOLATION OF THE FAIR CREDIT REPORTING ACT, WILLFUL NONCOMPLIANCE, 15 U.S.C. § 1681n)

79. Plaintiff repeats, re-alleges, and incorporates by reference all the foregoing paragraphs.

80. Plaintiff and the Class Members are "consumers" as defined by FCRA, 15 U.S.C. § 1681a(c).

17

81. TransUnion is a consumer reporting agency as defined by the FCRA.

82. TransUnion either directly, or through their agents, obtained, provided and/or misused information on Plaintiff's and the Class Members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living from a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

83. The private information at issue constitutes a "consumer report" as defined by the FCRA, 15 U.S.C. § 1681a(d).

84. Among other wrongful acts asserted herein, TransUnion willfully obtained, provided and/or misused Plaintiff's and the Class Members' consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681n. TransUnion, in particular, willfully obtained, used and/or provided the consumer reports under the false guise and/or pretext of a permissible FCRA purpose only to utilize the information for improper direct-mail marketing. Such conduct violates the FCRA. In the alternative, TransUnion reviewed, certified or approved the form direct-mail solicitation sent by Credit Associates when TransUnion knew or should have known about the solicitation's impermissible purpose in direct violation of the FCRA.

85. Under FCRA 15 U.S.C. § 1681e, the permissible purpose for which a consumer report is sought must be certified, and it must be further certified that the information will be used for no other purpose. 15 U.S.C. § 1681e.

86. TransUnion's actions and inactions described in this Complaint constitute violations of numerous provisions of the FCRA, including, but not limited to, each and every section of the FCRA cited herein.

18

87.     More particularly, TransUnion disregarded its duties under 15 U.S.C. § 1681e(a) to prevent misappropriation and misuse of the private and protected credit information of Plaintiff and the Class.

88.     TransUnion's failures resulted in the unlawful use of the credit information of Plaintiff and the Class to target them with direct-mail marketing materials that did not contain firm offers of credit or insurance.

89.     As a direct and proximate result of TransUnion's misconduct, Plaintiff and the Class have suffered actual harm that entitles them to statutory FCRA damages, among other relief.

**COUNT FIVE – TRANSUNION**
**(VIOLATION OF THE FAIR CREDIT REPORTING ACT,**
**NEGLIGENT NONCOMPLIANCE, 15 U.S.C. § 1681o**

90.     Plaintiff repeats, re-alleges, and incorporates by reference all the foregoing paragraphs.

91.     Among other wrongful acts asserted herein, TransUnion negligently obtained, provided and/or misused Plaintiff's and the Class Members' consumer reports without permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681n. TransUnion, in particular, negligently obtained, used and/or provided the consumer reports under the false guise and/or pretext of a permissible FCRA purpose only to utilize the information for improper direct-mail marketing.  Such conduct violates the FCRA.  In the alternative, TransUnion negligently reviewed, certified or approved the form direct-mail solicitation sent by Credit Associates when TransUnion knew or should have known about the solicitation's impermissible purpose in direct violation of the FCRA.

92.    TransUnion's actions and inactions described in this Complaint constitute violations of numerous provisions of the FCRA, including, but not limited to, each and every section of the FCRA cited herein.

93.    More particularly, TransUnion negligently disregarded its duties under 15 U.S.C. § 1681e(a) to prevent misappropriation and misuse of the private and protected credit information of Plaintiff and the Class.

94.    TransUnion's failures resulted in the unlawful use of the credit information of Plaintiff and the Class to target them with marketing materials other than firm offers of credit or insurance.

95.    As a direct and proximate result of TransUnion's misconduct, Plaintiff and the Class have suffered actual harm that entitles them to statutory FCRA damages, among other relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and the Class respectfully request that this Court:

a.    ISSUE a declaratory judgment that Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.;

b.    GRANT statutory damages as provided by the FCRA;

c.    GRANT punitive damages pursuant to Defendants' above-stated FCRA violations;

d.    AWARD costs and reasonable attorney's fees pursuant to the FCRA;

e.    AWARD such other and further relief as the Court may deem just and proper.

Respectfully submitted,
**Kitrick, Lewis, & Harris, Co. LPA**

/s/ Mark Lewis
Mark Lewis (0063700)
445 Hutchinson Avenue, Ste. 100
Community Corporate Center
Columbus, OH 43235-8630
Phone: (614) 224-7711
Fax: (614) 225-8985
mlewis@klhlaw.com
Attorney for Plaintiff
**Luftman, Heck & Associates, LLP**

/s/ Jeremiah E.  Heck, per consent
Jeremiah E.  Heck (0076742)
580 East Rich Street
Columbus, Ohio  43215
Phone: (614) 224-1500
Fax: (614) 224-2894
jheck@lawLH.com
Attorney for Plaintiff

**The Law Office of Brian M.  Garvine, LLC**

/s/ Brian M.  Garvine, per consent
Brian M.  Garvine (0068422)
5 East Long Street
Suite 1100
Columbus, OH 43215
Phone (614) 223-0290
Fax (614) 221-3201
brian@garvinelaw.com
Attorney for Plaintiff

**Robert J. Wagoner, Co., L.L.C.**

/s/ Robert J. Wagoner, per consent
Robert J. Wagoner (0068991)
Of Counsel to Kitrick, Lewis & Harris Co., L.P.A.
445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43235
Phone (614) 796-4110

21

Fax (614) 796-4111
Bob@wagonerlawoffice.com
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands trial by jury in this action.

/s/ Mark Lewis
Mark Lewis (0063700)