UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TARA S. HOPPER,

          **Plaintiff,**

  v.

CREDIT ASSOCIATES, LLC, *et. al.,*

          **Defendants.**

Case No. 2:20-cv-522
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Defendant Credit Associates, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 40; Mem. in. Supp., ECF No. 41), Plaintiff Tara S. Hopper's Memorandum in Opposition (ECF No. 66), and Credit Associates Reply (ECF No. 72). For the reasons stated below, the Court **DENIES** Credit Associates' Motion to Dismiss. (ECF No. 39.)

## I.

Since at least 2017, Credit Associates, a company based in Texas, has been marketing its debt settlement services to Ohio consumers through numerous advertising media. Credit Associates' commercials can be seen by Ohioans through the television, heard on the radio, and viewed through digital media. (Pl's Mem. in Opp. at 2, ECF No. 66) (citing Def.'s Second Supp. Resp. to Pl.'s Req. for Prod. Of Doc. No. 13–14; 17). In addition, Credit Associates solicits the business of Ohioans through the mail. In the last four years, Credit Associates has sent as many as 250,000 solicitous mailers to Ohio consumers. (*Id.*) (citing Def.'s Third Supp. Resp. to Pl.'s Req. for Prod. Of Doc. No. 17). Credit Associates offers debt relief services, indicating that it will negotiate with creditors on behalf of the client to reduce their total unsecured debt.

One way that Credit Associates targets its marketing is by obtaining from Trans Union (a consumer reporting agency), pre-screened lists of consumers meeting Credit Associates' selected criteria, and sending those consumers solicitous mailers. (*See* Second Am. Compl. at ¶¶ 22–25, ECF No. 33.) Credit Associates had the ability to omit Ohioans from the lists of pre-screened consumers it obtained. (Pl's Mem. in Opp. at 3, ECF No. 66.) On at least one occasion Credit Associates excluded Ohio from its direct mail disseminations. (*Id.* at 6) (citing Def.'s Second Supp. Resp. to Pl.'s Req. for Prod. Of Doc. No. 13–14; 17).

Credit Associates obtained lists of Ohio consumers based on debt balances, high interest-rate debt, and unsecured debt. (*See* Second Am. Compl. at ¶¶ 23–24, ECF No. 33.) Based on her inclusion on these lists, Hopper received two mailers at her Ohio address. (*Id.* at PageID 198, 200.) The mailers included an invitation for Hopper to call a listed number, which she did after receiving each mailer. (*Id.* at ¶¶ 40, 42; Ex. A and B, ECF No. 33, PageID 198, 200.)

Hopper ultimately concluded that the mailers failed to include a firm offer of credit, which violates the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). She provides three alternative theories for how Credit Associates' mailers failed to include a firm offer of credit. First, the mailers facially omitted a firm offer of credit. (*See id.* at ¶¶ 38–39, 46–50.) Second, the ostensible offer was a "sham." (*Id.* at ¶ 56.) Third, Credit Associates never intended to honor any ostensible offer. (*Id.* at ¶ 72(c).)

Credit Associates contends that the claims against it should be dismissed for lack of personal jurisdiction. The parties underwent jurisdictional discovery, they have fully briefed the motion, and the motion is now ripe for review.

## II.

When faced with a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of proving personal jurisdiction exists. *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1262-63 (6th Cir. 1996). "[A] motion to dismiss brought under Fed. R. Civ. P. 12(b)(2) may be heard and determined before trial, but [ ] the court has the power to defer hearing of evidence and a ruling on the motion until trial." *Serras v. First Tennessee Bank Nat. Ass'n,* 875 F.2d 1212, 1213–14 (6th Cir. 1989). "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Id.* (quoting *Gibbs v. Buck,* 307 U.S. 66, 71–72 (1939)).

If a trial court "decides that the motion can be ruled on before trial," and "rules on the motion without an evidentiary hearing, the plaintiff need only make a '*prima facie*' case that the court has personal jurisdiction." *Conn v. Zakharov,* 667 F.3d 705, 711 (6th Cir. 2012). In other words, "[t]he court need only find that plaintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006); *see also Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (stating that a plaintiff may make a *prima facie* showing by "establishing with reasonable particularity sufficient contacts between [the defendants] and the forum state to support jurisdiction").

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to "construe the facts in the light most favorable to the non-moving party." *Id.* The Court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Id.* This refusal to weigh the defendants' controverting assertions is necessary "to prevent non-resident defendants from avoiding jurisdiction simply by filing an affidavit that denies all jurisdictional facts." *CompuServe,*

89 F.3d at 1262 (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir. 1991)). But also where, as here, "the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction," the *prima facie* "proposition loses some of its significance." *Conn*, 667 F.3d at 711 (citing *Intl. Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)).

### III.

Credit Associates argues that this Court lacks personal jurisdiction over it regarding all claims brought by Hopper, and that it is therefore entitled to dismissal. There are two types of personal jurisdiction: general and specific. It is unclear whether Ohio recognizes general jurisdiction over non-resident defendants. *Conn*, 667 F.3d at 717 ("First, as we have explained, Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute. Indeed, to hold otherwise would come dangerously close to collapsing Ohio's two-part jurisdictional inquiry into one, an outcome that the Ohio Supreme Court has repeatedly rejected."). This Court need not address this unsettled issue here because, based on the analysis *infra*, Hopper has met her *prima facie* burden regarding specific jurisdiction over Credit Associates.

As to consideration of specific jurisdiction, "[u]nder Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn*, 667 F.3d at 712. Further, as of the date Hopper initiated this lawsuit, "[u]nlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-

arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Id.*[1]

## A.      Ohio's Long-Arm Statute

Though this case concerns federal law, this Court applies the long-arm statute of the forum state as the first step in determining whether the Court has jurisdiction over a non-resident defendant such as Credit Associates. *Vlach v. Yaple*, 670 F. Supp. 2d 644, 647–48 (N.D. Ohio 2009). Plaintiff contends that Credit Associates' conduct falls under three provisions of Ohio's long-arm statute: namely, Ohio Revised Code § 2307.382 (A)(3), (A)(4), and (A)(6). (Pl's Mem. in Opp. at 8, 11, 12, ECF No. 66.) Ohio's long-arm statute provides in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> > (3) Causing tortious injury by an act or omission in this state;
> >
> > (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> >
> > . . . .
> >
> > (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

Ohio Rev. Code Ann. § 2307.382. Under Ohio law, "a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the[se] enumerated bases in Ohio's long-arm statute." *Conn*, 667 F.3d at 717-18. Because the Court

---

[1] Effective December 16, 2020, Ohio's long arm statute contains a provision stating, "[i]n addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code Ann. § 2307.382(C).

concludes herein that provisions (A)(6) and (A)(4) provide for jurisdiction over Credit Associates, the Court need not address provision (A)(3).

1.      **Ohio Revised Code § 2307.382(A)(6)**

This Court recently discussed the Sixth Circuit's recognition that Ohio Revised Code § 2307.382(A)(6) is broadly applied:

> As the Sixth Circuit has observed, § 2307.382(A)(6) has been given a "broad approach to its application." *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012). In *Schneider*, the Court determined that § 2307.382(A)(6) applied to defendant, Utah attorney Thomas Nelson, where Nelson drafted a letter for a company operating a ponzi scheme. Nelson alleged that he did not participate in mailing the letter and that he did not know that the letter would be sent to an Ohio resident. The Appeals Court determined that "it defies logic that Nelson participated in this transmission but remained ignorant of the investors' geographic locations. If true, the only possible explanation is that Nelson intentionally buried his head in the sand, and that cannot save Nelson from being subject to jurisdiction in Ohio." *Id.* at 700-01.

*Corp. Bertec v. Sparta Software Corp.*, Case No. 2:19-cv-04623, 2020 U.S. Dist. LEXIS 78437, at *12 (S.D. Ohio, May 4, 2020).

In *Schneider*, the Sixth Circuit found jurisdiction existed under provision (A)(6) of Ohio's long-arm statute based upon the drafting of two letters. *See Schneider*, 669 F.3d at 697, 700. Here, Credit Associates' contacts with Ohio include but are not limited to the two mailers. Credit Associates sent these two mailers based upon its request for Hopper's credit information, the basis of her FCRA violation claims.

As Hopper points out, the Northern District of Ohio dealt with similar facts in *Vlach v. Yaple*, 670 F. Supp. 2d 644 (N.D. Ohio 2009). In *Vlach*, a California attorney sent a letter to an Ohio consumer; the letter contained alleged "unfair, deceptive, or unconscionable acts" in violation of the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01, *et seq.*, (OCSPA), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA). *See id.*

6

at 646–47. The California attorney had no other contacts with Ohio. *Id.* The court reasoned that, "[b]y allegedly sending 'false, deceptive, or misleading' representations in violation of [FDCPA] and allegedly committing 'unfair, deceptive, or unconscionable acts' in violation of [OCSPA, defendant] should have reasonably expected that the recipient would have been injured in this state, given that the letter was addressed to an Ohio resident." *Id.* at 648 (citations omitted).

In *Vlach*, the court found that provision (A)(6) of Ohio's long-arm statute conferred jurisdiction over the defendant based on the communications he sent to the plaintiff, communications that allegedly violated various consumer protection statutes. *Vlach*, 670 F.Supp.2d at 648. In making its determination, the *Vlach* court relied on three communications by letter and email and found that the causes of action arose directly from those communications. *Id.* There, the entities had a statutory duty and obligation to obey the FDCPA and the OCSPA. Here, Credit Associates has a similar duty and obligation to obey FCRA. Allegedly, it did not do so.

Specifically, Hopper alleges Credit Associates violated FCRA by obtaining and using her consumer report without her consent and without a proper purpose. (Second Am. Compl. at ¶¶ 1, 22–26, ECF No. 33.) Credit Associates allegedly did so by obtaining pre-screened lists and using the consumer reports contained therein to populate solicitations, including the mailers to Hopper.[2] (*Id.* at ¶¶ 1, 10, 14, 22–26.) FCRA explicitly prohibits obtaining and using consumer reports for an impermissible purpose pursuant to 15 U.S.C. § 1681b(f), which Hopper specifically alleges. (*Id.* at ¶¶ 20, 36.)

Thus, Hopper asserts Credit Associates violated FCRA in two distinct ways. First, by obtaining the consumer reports without a permissible purpose. And, second, by using the consumer reports without a permissible purpose. Credit Associates obtained Hopper's report outside of Ohio.

---

[2] Hopper asserts that the pre-screened lists at issue constitute "consumer reports" and are based on various factors bearing on creditworthiness. (Second Am. Compl. at ¶¶ 18, 19, ECF No. 33.)

However, it used Hopper's report to market to Hopper in Ohio. Credit Associates would or should have had the reasonable expectation that Hopper would be injured in Ohio. Credit Associates allegedly illegally obtained Hopper's private FCRA-protected data. (*Id.* at ¶¶ 71–72.) Allegedly, Credit Associates also willfully used the data to specifically address its solicitations to Hopper at her Ohio residence. (*Id.* at ¶ 78.) Credit Associates had the ability to exclude Ohio addresses. However, it specifically and knowingly chose to include Hopper's (and others') addresses in Ohio. (*See* Def.'s Second Supp. Resp. to Pl.'s Req. for Prod. of Doc. No. 13–14; 17).

Credit Associates attempts to distinguish *Vlach* and *Schneider* from the case at bar by arguing that in both of those cases the correspondences sent by the defendants allegedly violated the law. (Def's Reply at 13, ECF No. 72.) That is not a distinction, it is a similarity. Here too, the mailers allegedly violated the law: specifically, FCRA.

In its other argument against application of provision (A)(6), Credit Associates contends that Hopper has not shown that Credit Associates intended injury by its action. (Def's Reply at 15, ECF No. 72.) According to Credit Associates, the "only plausible reason" that Credit Associates would obtain and use Hopper's consumer report is to "provide a firm offer of credit." (*Id.*) In *Vlach*, the court rejected a similar argument, explaining that a factual dispute "cannot be resolved on the pleadings." *Vlach*, 670 F.Supp.2d at 645. Here too there is a factual dispute.

Hopper alleges Credit Associates willfully used her consumer report for marketing rather than providing a firm offer of credit (Second Am. Compl. at ¶¶ 1, 10, 14, 22–26, 72, ECF No. 33); that the ostensible firm offer in the mailers did not meet the definition of a firm offer of credit (*id.* at ¶¶ 38, 72); that the ostensible firm offer in the mailer was a "sham offer" (*id.* at ¶¶ 56, 72); and that even if the ostensible firm offer in the mailer was indeed a firm offer, Credit Associates never

had the intent to honor that offer. (*Id.* at ¶¶ 40–45, 56, 72.) These allegations, if proven true, could establish that Credit Associates purposefully injured Hopper.

For the reasons stated above, Hopper has made a *prima facie* showing that subsection (A)(6) of Ohio's long-arm statute, Ohio Revised Code § 2307.382, authorizes the exercise of jurisdiction over Credit Associates in this case.

### 2. Ohio Revised Code § 2307.382(A)(4)

Hopper submits that Ohio Revised Code § 2307.382(A)(4) similarly authorizes the exercise of jurisdiction over Credit Associates in this case. Provision (A)(4) of Ohio's long-arm statute confers jurisdiction over a defendant who "[c]aus[es] tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." Ohio Rev. Code Ann. § 2307.382(A)(4).

As discussed, analyzing Hopper's allegations in the light most favorable to her, Credit Associates caused tortious injury to Hopper in Ohio. Credit Associates also regularly solicits business in Ohio. In its discovery responses, Credit Associates indicated it engages in television, radio, and digital marketing. Credit Associates also admitted to sending as many as 250,000 mailers directly to consumers in Ohio over the course of at least four years. Such activity falls within the confines of Ohio Revised Code § 2307.382(A)(4).

Accordingly, Ohio Revised Code § 2307.382(A)(4) applies, conferring jurisdiction over Credit Associates in this case.

### 3. Conclusion – Ohio Long-Arm Statute

Based on the foregoing, the Court finds that jurisdiction is appropriately exercised under subsections (A)(6) and (A)(4) of the Ohio long-arm statute, Ohio Revised Code § 2307.382.

**B.     Fourteenth Amendment Due Process**

The Due Process Clause requires that the nonresident defendant possessed "minimum contacts" with the forum state such that exercising jurisdiction would comport with "traditional notions of fair play and substantial justice." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

In this circuit, a three-part test assesses the existence of "minimum contacts":

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *Beydoun,* 768 F.3d at 505 and *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

**1.     Purposeful Availment**

As to the first minimum contacts inquiry, the Sixth Circuit directs:

> "Purposeful availment," the "constitutional touchstone" of personal jurisdiction, is present where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (emphasis in original), and where the defendant's conduct and connection with the forum are such that he " 'should reasonably anticipate being haled into court there.' " *Id.* at 474 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King Corp.,* 471 U.S. at 475 (internal citation omitted).

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (parallel citations omitted).

The Supreme Court just this month explained that "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' " *Ford Motor Co. v. Montana Eighth Jud.*

*Dist. Ct.*, 19-368, 2021 WL 1132515, at \*4 (U.S. Mar. 25, 2021) (denying its motion to dismiss for lack of personal jurisdiction in action for design defect, failure to warn, and negligence brought by personal representative of resident driver who died following vehicle rollover in Montana) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). The minimum-contacts requirement is met if a defendant "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Id*. (citing *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). "It is the 'quality' of [the] contacts," and not their number or status, that determines whether they amount to purposeful availment." *CompuServe*, 89 F.3d at 1265 (citing *Reynolds,* 23 F.3d at 1119).

Credit Associates' argues that "the mailers themselves do not 'g[i]ve rise to Hopper's action' as she claims (Dkt. 66, p. 16), but rather were benign communications predicated on and the offspring of the prior alleged misconduct [pulling the credit report] committed out of state." (Def's Reply at 16, ECF No. 72.) That is, Credit Associates contends that Hopper's cause of action does not arise from the two mailers she received, but rather the violations of FCRA she claims occurred at the hands of Credit Associates "based upon its request for Hopper's credit information which was based upon her specific credit profile." (*Id*. at 18.) Further, Credit Associates contends "that advertising likewise did not give rise to her claim and is not the heart of her cause of action— those mailers, commercials, and ads are closer in line with 'the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." (*Id*. at 17.) This Court disagrees.

Plaintiff has set forth "specific facts" that show that Credit Associates markets its services to Ohio consumers through television, radio, and digital advertisements. (Pl's Mem. in Opp. at 2, ECF No. 66) (citing (Def.'s Second Supp. Resp. to Pl.'s Req. for Prod. of Doc. No. 13–14; 17)). In addition, Credit Associates sent between 150,000 and 250,000 mailers to Ohio consumers over

the last four years. (*Id.*) (citing (Def.'s Third Supp. Resp. to Pl.'s Req. for Prod. of Doc. No. 17)).
And, Credit Associates sent two mailers to Hopper at her Ohio address, both of which stated that
they were "based on information in [her] credit report," (Second Am. Compl., ECF No. 33, PageID
198, 200), and both of which allegedly did not contain a firm offer of credit, which she alleges
violated FCRA.

These contacts are not fortuitous and nonmeaningful, they were the choice of Credit
Associates, and they create a substantial connection with Ohio. Thus, the Court concludes that
Credit Associates' purposely availed itself of the privilege of conducting activities in Ohio and it
should reasonably anticipate being haled into court there.

### 2.     Arising from or Relating to Defendant's Activities

Second, the due process minimum contacts inquiry requires the Court to determine whether
this litigation "arise[s] out of or relate[s] to" Credit Associates' contacts with Ohio. *Bristol-Myers
Squibb Co. v. Superior Court of California, San Francisco County*, ___ U.S. ___, 137 S.Ct. 1773,
1780 (2017). "If a defendant's contacts with the forum state are related to the operative facts of
the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe,
Inc.*, 89 F.3d at 1267.

Credit Associates argues "that a defendant cannot be sued in a distant forum simply
because that forum is where plaintiff resides, and this is particularly true of FCRA permissible
purpose cases." (Def's Reply at 20, ECF No. 72) (citing *Cunningham v. Nationwide Sec. Sols.,
Inc.*, No. 3:17-cv-337-S-BN, 2018 WL 4575005, *14 (N.D. Tex. Aug. 31, 2018). Credit Associates
relies upon the Texas district court's interpretation of *Walden v. Fiore*, 571 U.S. 277, 287 (2014),
which it claims stands for the proposition that "a defendant's allegedly violating the FCRA to harm
a plaintiff known to reside in the forum state, without more, does not" satisfy due process. Plaintiff

too relies on *Walden* to support her position because, she argues, unlike the defendant in *Walden* who "created no contacts whatsoever with the forum state," Credit Associates created numerous contacts with Ohio. (Pl. Mem. in Op. at 14–15, ECF No. 66.) This Court agrees.

In determining whether the claims arise out of a defendant's activities in the forum state, the Sixth Circuit addresses *Walden*, explaining that it stands for the proposition that a plaintiff cannot create jurisdiction on the basis of his or her contacts with the forum; instead, jurisdiction is created by the relationship between a defendant and the forum. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 901 (6th Cir. 2017). The *Schmuckle* court explained:

> As an initial matter, we are not persuaded by Schmuckle's argument that *Walden* precludes a finding of jurisdiction in this case. In *Walden*, the Court considered whether a federal court in Nevada had jurisdiction over a Georgia police officer who had filed a false affidavit against two Nevada residents knowing that it would affect them in Nevada. 134 S.Ct. at 1120. The Court found that the officer lacked minimum contacts because the officer's conduct occurred in Georgia and he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 1124–25. The officer's only connection to Nevada was by way of the plaintiffs he targeted there. *Id.*
>
> In holding that "mere injury to a forum resident is not a sufficient connection to the forum," *id.* at 1125, the Court distinguished its prior decision in *Colder v. Jones*, 465 U.S. 783 (1984), where it had found personal jurisdiction in California over an out-of-state defendant based on a libelous article published there, reasoning that the tort had involved the California community beyond just the plaintiff. *Walden*, 134 S.Ct at 1125; *Colder*, 465 U.S. at 788–89.

*Id.* at 900 (parallel citations omitted).

As to the scope of *Walden*, the *Schmuckle* court stated:

> We need not define the exact scope of *Walden* and its effect on *Calder* in order to resolve this case. It is enough to say that plaintiffs must do more than claim that Schmuckle's actions affected them in Michigan and must show that Schmuckle had some level of contact with the state, and that Schmuckle cannot avoid jurisdiction by framing all of his activities as contacts with plaintiffs—who happen to be in Michigan—instead of contacts with Michigan itself.

*Id.* at 901.

13

Additionally, in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 19-368, 2021 WL 1132515, the defendant argued that the state court had jurisdiction "only if the defendant's forum conduct gave rise to the plaintiff's claims." *Id.* at 8 (emphasis removed; citation omitted). Rejecting that argument, the Supreme Court explained that while suit must "'arise out of *or relate to* the defendant's contacts with the forum.' . . . the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* (emphasis in *Ford*; citation omitted).

Here, Hopper does not allege that this Court possesses personal jurisdiction over Credit Associates based only on its contacts with Hopper in Ohio. Hopper, as set out in detail above, alleges that Credit Associates markets its services to Ohio consumers through television, radio, digital advertisements, and mailer solicitations. Further, the two mailers Credit Associates sent Hopper at her Ohio address are integral to this litigation. That is, if the mailers contain a firm offer of credit that will be honored then Credit Associates obtained and used Hopper's consumer report for a proper purpose. If the mailers do not contain a firm offer of credit that will be honored, then Credit Associates obtained and used Hopper's consumer report for an improper purpose. 15 U.S.C. §§ 1681b(c)(1)(B)(i) and 1681a(l). Hopper alleges that these two mailers were part of an improper direct-mail marketing campaign. All of Credit Associates' additional contacts with Ohio are related to its broader Ohio marketing campaign.

Therefore, Hopper does not simply assert jurisdiction because she resides in Ohio. Credit Associates' contacts with Ohio are related to the operative facts of this controversy, the injury was completed in Ohio, and the harm was felt in Ohio. Thus, the litigation arises out of and is related to Credit Associates activities in Ohio, meeting this element of the analysis.

### 3. Reasonableness

In the last inquiry, this Court must "consider whether exercising personal jurisdiction over [Credit Associates] would be reasonable, *i.e.*, whether it would "comport within 'traditional notions of fair play and substantial justice.'" *CompuServe, Inc.*, 89 F.3d at 1267–68 (citing *Reynolds,* 23 F.3d at 1117 and *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California, Solano County*, 480 U.S. 102, 113 (1987)). In this circuit, if the Court finds, as it does here, "the first two elements of a *prima facie* case—purposeful availment and a cause of action arising from the defendant's contacts with the forum state—then an inference arises that this third factor is also present." *Id.* (citing *American Greetings Corp.,* 839 F.2d at 1170 and *Mohasco Indus.,* 401 F.2d at 384 & n. 30). "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co., Ltd.*, 480 U.S. at 102.

A court must consider several factors in this context, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *American Greetings Corp.,* 839 F.2d at 1169–70 (citing *Asahi Metal Indus.,* 480 U.S. at 113, 107 S.Ct. at 1032–33); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (explaining that "[i]mplicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors . . .").

Credit Associates argues that its principal and only place of business is in Texas and it is not incorporated in Ohio, has no offices, no employees, and no assets located in Ohio. Thus, while not explicitly stating so, it appears Defendant contends that Texas would be a more appropriate

forum. These facts, however, cannot overcome the inference that arises because the other two elements of the minimum contacts analysis are met.

As discussed in detail above, Credit Associates reached into Ohio to market its services, to Ohio residents, one of whom is Hopper. Hopper has a strong interest in obtaining relief in her choice of forum, Ohio. Ohio is the only location at which she dealt with Credit Associates who solicited her business at her home in Ohio. Credit Associates purposely targeted Ohioans providing a strong interest for Ohio to protect its citizens from harm that occurred to its citizens who never left the state. Consequently, the Court finds that the exercise of jurisdiction over Credit Associates in Ohio is reasonable; it comports with traditional notions of fair play and substantial justice.

### 4.     Conclusion – Due Process

In summary, the constitutional requirements for the exercise of specific jurisdiction over Credit Associates are met. Credit Associates purposefully availed itself of the privilege of acting and causing consequences in Ohio; Hopper's causes of action arise from Credit Associates' activities in Ohio; and, Credit Associates has a substantial enough connection with Ohio that the exercise of jurisdiction over it is reasonable.

### IV.

For the reasons stated above, Credit Associates' Motion to Dismiss, (ECF No. 40), is **DENIED**.

**IT IS SO ORDERED.**


**3/31/2021**                                           **s/Edmund A. Sargus, Jr.**
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**